## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| SEVEN NETWORKS, LLC, | |
| Plaintiff, | Civil Action No. 2:18-cv-477 |
| v. | PATENT CASE |
| GOOGLE LLC | **JURY TRIAL DEMANDED** |
| Defendant. | |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff SEVEN Networks, LLC ("SEVEN") files this Complaint for Patent Infringement of several United States patents as identified below (collectively, the "Patents-in-Suit") and alleges as follows:

### PARTIES

1.      SEVEN is a company formed under the laws of Delaware with its principal place of business at 2660 East End Boulevard South, Marshall, Texas 75672.

2.      Defendant Google LLC is a limited liability company formed under the laws of Delaware with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043, and may be served through its agent Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

3.      Google is a self-described "information company" that is in the business of storing, organizing, and distributing data. Its stated mission is to "organize the world's information and make it universally accessible and useful." Its stated vision is "to provide access to the world's information in one click."

JURISDICTION

4.      SEVEN brings this civil action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 *et. seq.*, including 35 U.S.C. §§ 271, 281-285.  This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

5.      Google transacts and conducts business in this District and the State of Texas, and is subject to the personal jurisdiction of this Court. For example, Google maintains offices in Dallas and Austin. Additionally, Google promotes and sells its products, such as its Pixel smartphone, through its online store (https://store.google.com/), which is available to and accessed by residents of this District and the State of Texas. Google has also sold other products, such as the Nexus smartphone, through this website.

6.      SEVEN's causes of action arise, at least in part, from Google's business contacts and activities in this District and elsewhere within the State of Texas. Google has committed acts of infringement in this District and within Texas by making, using, selling, offering for sale, or importing into the United States products that infringe one or more claims of the Patents-in-Suit. Further, Google encourages others within this District to use, sell, offer to sell, or import certain mobile products that infringe one or more claims of the Patents-in-Suit. For example, Google advertises its mobile devices, such as its smart phones, through its websites: https://madeby.google.com/phone/?utm_source=ads-en-ha-na-sem; https://www.google.com/nexus/. Further, Google provides its customers with information regarding the various functionalities offered by its products and software, such as its various battery saving modes: https://support.google.com/pixelphone/answer/6187458, https://developer.android.com/training/monitoring-device-state/index.html.

7.      Google actively solicits customers within this District and the State of Texas and

has sold many of its infringing mobile products to residents of Texas and this District.

Venue

8.    Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400. Venue is proper under 28 U.S.C. § 1400(b) because Google has committed acts of infringement in this district and has a regular and established place of business in this district. *See Seven Networks, LLC v. Google LLC*, C.A. No. 2:17-cv-00442-JRG, D.I. 235 (E.D. Tex. July 19, 2018) (finding venue proper as to Google in the Eastern District of Texas).

9.    On information and belief, Google conducts at least the following activities by and through its regular and established locations within this district:

   a.   Google does business in this District through Google Play stores that: (i) are located in the form of applications—which are owned and controlled by Google—on computers and mobile devices of residents of this District; and (ii) are served by servers located in this District that are owned and controlled by Google;

   b.   Google provides on-demand video-rental services to residents of this District through its Google Play Movies and YouTube services, including through software owned and controlled by Google that is located on servers, computers, and mobile devices located in this District;

   c.   Google provides advertising services in this district, including through servers owned and controlled by Google that are located in this District, and including through software owned and controlled by Google that is located on computers and mobile devices located in this District;

   d.   Google owns and controls servers, including servers located in this District, that provide Google services to users, including users in this District;

e.   Google uses the hardware and software located in this District that it owns and controls to conduct and transact business in this District with residents of this District;

f.   Google uses hardware and software it owns and controls in this District for content caching, video streaming, and reverse proxy;

g.   Google uses hardware and software it owns and controls in this District to provide data and advertising to residents of this District;

h.   Google interacts in a targeted way with existing and potential customers, consumers, users, and entities within this District, including but not limited to targeted marketing efforts;

i.   Google derives benefits, including but not limited to sales revenues, from its presence in this District as set forth in Paragraphs 9a-9i, above

## THE PATENTS-IN-SUIT

10.    On November 8, 2016, the United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 9,491,703, titled "Dynamic Adjustment of Keep-Alive Messages for Efficient Battery Usage in a Mobile Network," to inventors Ari Backholm *et al.* ("the '703 Patent").  A true and correct copy of the '703 Patent is attached as Exhibit A to this Complaint.

11.    On March 21, 2017, the USPTO duly and legally issued U.S. Patent No. 9,603,056, titled "Mobile Application Traffic Optimization," to inventors Michael Luna *et al.* ("the '056 Patent").  A true and correct copy of the '056 Patent is attached as Exhibit B to this Complaint.

12.    On May 23, 2017, the USPTO duly and legally issued U.S. Patent No. 9,661,103,

titled "Mobile Device Having Improved Polling Characteristics for Background Applications," to inventors Michael Luna *et al.* ("the '103 Patent").  A true and correct copy of the '103 Patent is attached as Exhibit C to this Complaint.

13.     On June 13, 2017, the USPTO duly and legally issued U.S. Patent No. 9,681,387, titled "Mobile Traffic Optimization and Coordination and User Experience Enhancement," to inventors Michael Luna *et al.* ("the '387 Patent").  A true and correct copy of the '387 Patent is attached as Exhibit D to this Complaint.

14.     On August 8, 2018, the USPTO duly and legally issued U.S. Patent No. 10,063,486, titled "Offloading Application Traffic to a Shared Communication Channel for Signal Optimization in a Wireless Network for Traffic Utilizing Proprietary and Non-Proprietary Protocols," to inventors Rami Alisawi *et al.* ("the '486 Patent").  A true and correct copy of the '486 Patent is attached as Exhibit E to this Complaint.

15.     On October 2, 2018, the USPTO duly and legally issued U.S. Patent No. 10,091,734, titled "Optimizing Mobile Network Traffic Coordination Across Multiple Applications Running on a Mobile Device," to inventors Michael Luna *et al.* ("the '734 Patent").  A true and correct copy of the '734 Patent is attached as Exhibit F to this Complaint.

16.     SEVEN owns the entire right and title to each of the Patents-in-Suit.

## BACKGROUND

17.     For nearly two decades, SEVEN has researched and developed innovative software solutions for mobile devices directed to enhancing the user experience.  For example, SEVEN has developed software technologies to manage mobile traffic in order to conserve network and battery resources.  Software applications on mobile devices are frequently signaling the network for a variety of reasons.  Much of the signaling from these software applications is

unnecessary and simply consumes precious bandwidth and remaining battery power.  This needless mobile traffic negatively impacts the user's overall experience by creating service overloads and outages or draining the limited battery of the mobile device.  SEVEN's technologies are able to optimize mobile traffic to conserve both network and battery resources.

18.    SEVEN has been recognized in the industry for its innovative technologies and products.  For example, at the Mobile World Congress in 2011, the GSMA awarded SEVEN with its Global Mobile Award for Best Technology Breakthrough.  Further, in 2013 SEVEN won the Mobile Merit Award for its outstanding innovations in the mobile industry and was identified as one of fifty mobile companies to watch by AlwaysOn.  SEVEN was also awarded the Best Free Android App in 2013 by TechRadar.  Additionally, and among other industry recognition, Telecoms.com identified SEVEN in its Best LTE Traffic Management Product Short List.

19.    Battery life for mobile devices is a major driver for consumer purchasing decisions. In a 2014 poll by Ubergizmo of 50,000 participants, battery life was rated as a smartphone's most important feature. Google recognizes the importance of battery life in mobile devices and has incorporated software technologies for conserving battery life in its devices and operating systems. As described below, Google's mobile devices and operating systems also implement software to manage mobile traffic to save battery power. These devices and systems infringe SEVEN's innovative and patented technology.

COUNT 1

**(Infringement of U.S. Pat. No. 9,491,703)**

20.    Google infringes at least claim 15 of the '703 Patent under 35 U.S.C. §271(a) and (b).  Google makes, uses, sells, offers to sell, or imports into the United States products, such as the Google Pixel 2, that meet every limitation of at least claim 15.

21.     Claim 15 of the '703 Patent is directed to a mobile device comprising a communications interface and a battery, the mobile terminal in conjunction with the communications interface is configured for: (1) establishing a first connection over a network between a mobile terminal and a remote entity; (2) sending, from the mobile terminal, keep-alive messages at varying intervals via the first connection in response to inactivity in the first connection; wherein the first connection is disconnected after a first period of inactivity; (3) establishing a second connection over the network between the mobile terminal and the remote entity; (4) sending, from the mobile terminal, keep-alive messages at varying intervals via the second connection in response to inactivity in the second connection; wherein the second connection is disconnected after a second period of inactivity; and (5) sending, from the mobile terminal  with a processor keep-alive messages at a safe interval via a subsequent connection over the network in response to inactivity in the subsequent connection, wherein the safe interval is based on the first disconnection and the second disconnection.

22.     Google's products infringe at least claim 15 of the '703 Patent.  For example, the Google Pixel 2 is a mobile terminal that includes a 2700mAh battery and communications interfaces for multiple wireless networks, including LTE and Wi-Fi 802.11 a/b/g/n/ac interfaces. Google's Pixel 2 includes the Android 8.0 operating system, which includes the Adaptive Heartbeat feature for sending keep-alive messages to Google's Firebase Cloud Messaging (FCM) servers. Google's Pixel 2, and Google's other products including the Adaptive Heartbeat feature, are configured to establish a connection to Google's FCM servers and send keep-alive messages at varying intervals when that connection is idle. The interval for sending keep-alive messages varies, with the interval increasing based on the number of successfully returned keep-alive messages. If the first connection is lost after a period of inactivity, Google's Pixel 2 is configured

to establish a second connection to Google's FCM servers, and to send keep-alive messages according to the same varying interval scheme. However, if the second connection is lost after a period of inactivity, Google's Pixel 2 is configured to send keep-alive messages over a subsequent connection at a safe interval based on the first and second disconnections.

23.    Other Google products similarly infringe one or more claims of the '703 Patent. Such other products include at least Google's Pixel 3 devices.

24.    Google also induces infringement by end users of Google's mobile devices of at least claim 15 of the '703 Patent.  Google promotes and advertises the use of its products, especially the products' capability to preserve remaining battery support applications requiring network connectivity. The Adaptive Heartbeat feature embodying claim 15 as described above contributes to this capability by allowing Google Products' to efficiently discover keep-alive intervals that minimize keep-alive signaling while avoiding connection loss and the battery and service loss that results.  The infringing power saving functionality is included in Google's mobile devices by default. Examples of Google's promotional materials appear on the company's website, such as https://store.google.com/us/product/pixel_2_specs?hl=en-US (last visited Oct. 28, 2018).

25.    Google has had notice of the '703 Patent since at least the filing of this suit. Accordingly, Google's continued promotion, advertisement, and encouragement of its customers to utilize the products' capability to preserve battery life and avoid battery drain from background applications is evidence of Google's specific intent to induce others to infringe the '703 Patent. Further, despite having knowledge of its infringement, Google continues to intentionally and willfully infringe at least claim 15 of the '703 patent.

COUNT 2

**(Infringement of U.S. Pat. No. 9,603,056)**

26.     Google infringes at least claim 1 of the '056 Patent under at least 35 U.S.C.

§271(a) and (b).  Google makes, uses, sells, offers to sell, or imports into the United States

products, such as the Google Pixel 2, that meet every limitation of at least claim 1.

27.     Claim 1 of the '056 Patent is directed to a mobile device configured to optimize

connections made by the mobile device in a wireless network, the mobile device comprising a

memory, a radio, and a processor, the mobile device configured to: (1) batch data from a first

application and a second application for transmission to a respective first application server and a

second application server over the wireless network, wherein the batched data from the first

application and the second application is batched while a backlight of the mobile device is off in

response to inactivity of the mobile device; (2) allow a first message from a remote server distinct

from the first application server and the second application server to be received while the

batched data from the first application and the second application is batched; wherein the first

message from the remote server is directed to the first application and contains data from the first

application server and is associated with the mobile device and the first application; (3) transmit a

second message associated with the first application to the remote server or the first application

server in response to receipt of the first message from the remote server; and (4) transmit the

batched data to the respective first application server and the second application server over the

wireless network while the backlight of the mobile device remains off; wherein the batching of

data for the first application and the second application can be enabled or disabled by a user of the

mobile device on an application-by-application basis.

28.     Google's products infringe at least claim 1 of the '056 Patent. For example,

Google's Pixel 2 is a mobile device comprising a memory (at least 4 GB of RAM and 64 GB of NAND Flash), a radio (at least an LTE and an 802.11 a/b/g/n/ac radio), and a processor (Qualcomm Snapdragon 835). The Pixel 2 also includes an AMOLED screen, which includes a backlight. Google's Pixel 2 has Google's Android 8.0 (Oreo) loaded into its memory, and is configured by that operating system and its pre-loaded apps to perform the functions detailed below. For example, Google's Pixel 2 is configured to batch data from applications for transmission to their corresponding application servers over a wireless network through Android's JobScheduler API. JobScheduler collects information about jobs that need to run across all apps and uses that information to schedule jobs to run at or around the same time, allowing the device to enter and stay in sleep states longer and preserving battery life.[1] Google's Pixel 2 is configured to batch data from applications and transmit that batched data while a backlight of the device is off in response to inactivity of the mobile device: JobScheduler batches and executes jobs regardless of screen or backlight status, subject to other device restrictions (e.g., Doze mode). The Pixel 2 is also configured to allow a message (a first message) from Google's FCM server (remote server distinct from the first application server and second application server) while data is batched. Messages from Google's FCM server are specifically associated with both the mobile device and a specific application on each device, and contain data from the application's corresponding application server.[2] The Pixel 2 is configured to transmit a second message associated with the first application to its corresponding application server in response to the message from the FCM server—for example, the pre-loaded Gmail app on the Google Pixel 2 is configured to send a message to its application server to initiate synchronization in response to receiving an FCM message. Google's Pixel 2 is configured to permit the above-

---

[1] https://developer.android.com/topic/performance/scheduling (Last visited Oct. 4, 2018)
[2] https://firebase.google.com/docs/cloud-messaging/ (Last visited Oct. 4, 2018)

COMPLAINT FOR PATENT INFRINGEMENT

described batching to be enabled or disabled on an application by application basis—the "allow background activity" option permits users to disable background activity for applications, which prevents the batching described above.

29.    Other Google products similarly infringe one or more claims of the '056 Patent. Such other products include at least Google's Pixel 3 devices.

30.    Google also induces infringement by end users of its mobile devices of at least claim 1 of the '056 Patent.  Google promotes and advertises the use of its products, especially the products' capability to preserve remaining battery and avoid battery drain from background applications.  Further, the JobScheduler functionality is enabled on Google's mobile devices by default. Examples of Google's promotional materials appear on the company's website, such as https://store.google.com/us/product/pixel_2_specs?hl=en-US (last visited Oct. 28, 2018).

31.    Google has had notice of the '056 Patent and its infringement since at least as early as the filing of this lawsuit.  Accordingly, Google's continued promotion, advertisement, and encouragement of its customers to utilize the products' capability to preserve battery life and avoid battery drain from background applications is evidence of Google's specific intent to induce others to infringe the '056 Patent. Further, despite having knowledge of its infringement, Google continues to intentionally and willfully infringe at least claim 1 of the '056 patent.

COUNT 3

**(Infringement of U.S. Pat. No. 9,661,103)**

32.    Google infringes at least claim 1 of the '103 Patent under at least 35 U.S.C. §271(a) and (b).  Google makes, uses, sells, offers to sell, or imports into the United States products, such as the Pixel 2, that meet every limitation of at least claim 1.

33.    Claim 1 of the '103 Patent is directed to a mobile device configured for aligning

data transfer from the mobile device to optimize connections made by the mobile device in a wireless network, the mobile device comprising a memory; a backlight; a radio; and a processor; the mobile device configured to: while the backlight of the mobile device is on, (1) detect that a first application is executing in the background of the mobile device; (2) detect that a second application is executing in the foreground of the mobile device; (3) batch a first set of data for the first application; (4) transmit the first set of batched data for the first application; and (5) transmit data for the second application at a time when the second application requests transmission; and, while the backlight of the mobile device is off in response to inactivity of the mobile device: (1) detect that the second application is executing in the background of the mobile device; (2) batch a second set of data for the first application and the second application; and (3) transmit the second set of batched data for the first application and the second application, wherein the transmission of the second set of batched data occurs after at least a predetermined period of time.

34.    Google's products infringe at least claim 1 of the '103 Patent. For example, Google's Pixel 2 is a mobile device comprising a memory (at least 4 GB of RAM and 64 GB of NAND Flash), a radio (at least an LTE and an 802.11 a/b/g/n/ac radio), and a processor (Qualcomm Snapdragon 835). The Pixel 2 also includes an AMOLED screen, which includes a backlight. Google's Pixel 2 has Google's Android 8.0 (Oreo) loaded into its memory, and is configured by that operating system and its pre-loaded apps to perform the functions detailed below. Google's Pixel 2 is configured to, while the backlight of the device is on, detect whether an application is executing in a background or a foreground of the device — Android gives different privileges to background and foreground applications, and must therefore be able to detect whether an application is executing in the foreground or the background. Google's Pixel 2 is

configured to, while the backlight of the device is on, batch data from applications, including background applications. JobScheduler, part of the Android operating system on Google's Pixel 2, is configured to batch data received from applications for transmission over the wireless network, and may be invoked by a foreground or background application.  While the backlight is on, Google's Pixel 2 is configured to allow an application executing in the foreground to transmit data when the application requests transmission. Google's Pixel 2 is further configured, while its backlight is off due to inactivity, to detect that applications are executing in the background and batch data for those applications. Google's Pixel 2 is configured to enter Doze mode while the device's backlight is off in response to inactivity of the mobile device. While in Doze mode, Google's Pixel 2 is configured to detect applications executing in the background, to batch data from those applications, and to transmit that batched data after at least a predetermined period of time. Doze mode on Google's Pixel 2 is configured to batch data from applications during predetermined doze periods and then transmit that batched data during maintenance windows between the doze periods, as illustrated below:



**Figure 1.** Doze provides a recurring maintenance window for apps to use the network and handle pending activities.

https://developer.android.com/training/monitoring-device-state/doze-standby (last visited Oct. 4, 2018)

  35.  Other Google products similarly infringe one or more claims of the '103 Patent. Such other products include at least Google's Pixel 3 devices.

36.     Google also induces infringement by end users of its mobile devices of at least claim 1 of the '103 Patent.  Google promotes and advertises the use of its products, especially the products' capability to preserve remaining battery power and avoid battery drain from background applications.  Further, the Doze and JobScheduler functionalities are enabled on Google's mobile devices by default. Examples of Google's promotional materials appear on the company's website, such as https://store.google.com/us/product/pixel_2_specs?hl=en-US (last visited Oct. 28, 2018).

37.     Google has had notice of the '103 Patent and its infringement since at least as early as the filing of this lawsuit.  Accordingly, Google's continued promotion, advertisement, and encouragement of its customers to utilize the products' capability to preserve battery life and avoid battery drain from background applications is evidence of Google's specific intent to induce others to infringe the '103 Patent. Further, despite having knowledge of its infringement, Google continues to intentionally and willfully infringe at least claim 1 of the '103 patent.

COUNT 4

**(Infringement of U.S. Pat. No. 9,681,387)**

38.     Google infringes at least claim 16 of the '387 Patent under at least 35 U.S.C. §271(a) and (b).  Google makes, uses, sells, offers to sell, or imports into the United States products, such as the Pixel 2, that meet every limitation of at least claim 16.

39.     Claim 16 of the '387 Patent is directed to a mobile device comprising a radio, a memory, and a processor configured to allow the mobile deice to: (1) monitor at least one characteristic of user activity on the mobile device, wherein one of the at least one characteristic of user activity is a determined inactivity of the user; and (2) locally adjust behavior of the mobile device to optimize battery consumption on the mobile device by entering the mobile device into a

power save mode, wherein entry into the power save mode occurs in response to a duration of determined inactivity of the user exceeding a first predetermined amount of time, and, when in the power save mode, (3) suppress outgoing network communications to a first application server from the mobile device for a first suppression period for a first application while user activity is not detected, (4) suppress outgoing network communications to a second application server from the mobile device for the first suppression period for a second application while user activity is not detected, (5) receive a message during the first suppression period directed towards the first application, wherein the message is received from a remote server distinct from the first application server, wherein the message contains data from the first application server, and (6) transmit communications after expiration of the first suppression period while user activity is not detected; and when user activity is detected after entry into the power save mode, exit the power save mode and transmit communications.

40.     Google's products infringe at least claim 16 of the '387 Patent. For example, Google's Pixel 2 is a mobile device comprising a memory (at least 4 GB of RAM and 64 GB of NAND Flash), a radio (at least an LTE and an 802.11 a/b/g/n/ac radio), and a processor (Qualcomm Snapdragon 835). Google's Pixel 2 has Google's Android 8.0 (Oreo) loaded into its memory, and is configured by that operating system and its pre-loaded apps to perform the functions detailed below. Google's Pixel 2 is configured to monitor indicators of user activity, including the time since the screen turned off, and whether the device is stationary, and to enter Doze mode in response to a duration of determined inactivity of the user (e.g., the device being stationary with its screen off) exceeding a first predetermined amount of time. When in doze (power save) mode, while user activity is not detected, Google's Pixel 2 is configured to suppress communications from its applications to their respective application servers for suppression

periods, e.g., doze periods. During those doze periods, while in power save mode, Google's Pixel 2 is configured to receive messages from Google's Firebase Cloud Messaging (FCM) and/or Google Cloud Messaging (GCM) servers. FCM messages are directed towards individual applications and contain information from the application's respective application server, e.g., FCM messages for the pre-loaded Gmail application contain information from Gmail's servers to that new email has been received. When in Doze mode, Google's Pixel 2 is configured to transmit communications during maintenance windows after each suppression period. The diagram below illustrates this behavior:



**Figure 1.** Doze provides a recurring maintenance window for apps to use the network and handle pending activities.

https://developer.android.com/training/monitoring-device-state/doze-standby (last visited Oct. 4, 2018). Google's Pixel 2 is further configured to exit Doze mode (power save mode) when user activity is detected. Once Google's Pixel 2 exits Doze mode, applications whose communications were suppressed by Doze mode are permitted to transmit communications.

      41.     Other Google products similarly infringe one or more claims of the '387 Patent. Such other products include at least Google's Pixel 3 devices.

      42.     Google also induces infringement by end users of its mobile devices of at least claim 16 of the '387 Patent.  Google promotes and advertises the use of its products, especially the products' capability to preserve remaining battery and avoid battery drain from background applications.  The Doze functionality is enabled on Google's mobile devices by default. Examples

of Google's promotional materials appear on the company's website, such as

https://store.google.com/us/product/pixel_2_specs?hl=en-US (last visited Oct. 28, 2018).

43.     Google has had notice of the '387 Patent and its infringement since at least as early as the filing of this lawsuit.  Accordingly, Google's continued promotion, advertisement, and encouragement of its customers to utilize the products' capability to preserve battery life and avoid battery drain from background applications is evidence of Google's specific intent to induce others to infringe the '387 Patent. Further, despite having knowledge of its infringement, Google continues to intentionally and willfully infringe at least claim 16 of the '387 patent.

COUNT 5

**(Infringement of U.S. Pat. No. 10,063,486)**

44.     Google infringes at least claim 11 of the '486 Patent under at least 35 U.S.C. §271(a) and (b).  Google makes, uses, sells, offers to sell, or imports into the United States products, such as its Pixel 2, that meet each and every limitation of at least claim 11.

45.     Claim 11 of the '486 Patent is directed to a mobile device comprising a memory and processor configured for: (1) detecting user inactivity on a mobile device; and, in response to detected inactivity, (2) blocking a first channel to reduce network signaling in a network and to reduce battery consumption, wherein the first channel is a channel specific to a first application executing on the mobile device; wherein the first application is configured to receive communications over a second channel that is established over the network, wherein a second application executing on the mobile device also receives communications over the second channel; (3) monitoring the application traffic for receipt of a message for the first application over the second channel, wherein the message informs the mobile device that there is new data for receipt at an application server associated with the first application; (4) unblocking the first

channel based on the monitored application traffic so that the first application can perform an action over the first channel; and (5) re-blocking the first channel after a predetermined period of time; and (6) unblocking the first channel when user activity is detected, wherein the user activity is based on of whether the mobile device is being interacted with by a user.

46.     Google's products infringe at least claim 11 of the '486 Patent. For example, Google's Pixel 2 is a mobile device comprising a memory (at least 4 GB of RAM and 64 GB of NAND Flash) and a processor (Qualcomm Snapdragon 835). Google's Pixel 2 has Google's Android 8.0 (Oreo) loaded into its memory, and is configured by that operating system and its pre-loaded apps to perform the functions detailed below. Google's Pixel 2 is configured for detecting user inactivity on the device, including, for example, the time since the screen turned off and whether the device is stationary. Google's Pixel 2 is configured for detecting inactivity (e.g., when the device is not moved and the screen not turned on for a period of time), and, in response to that detected inactivity, entering into Doze mode. In Doze mode, Google's Pixel 2 is configured to block a first channel to reduce signaling in a network and to reduce battery consumption, where the first channel is a channel specific to a first application executing on the device. For example, during the doze period in Doze mode, applications are not permitted to transmit information to their respective application servers – those communications are blocked until the maintenance window. This reduces signaling in the network and battery use by the device. While in Doze mode, Google's Pixel 2 and the applications on it are configured to receive communications over a second channel that is established over the network, e.g., the connection between Google's Pixel 2 and Google's Firebase Cloud Messaging (FCM) or Google Cloud Messaging (GCM) servers. Multiple applications on Google's Pixel 2 are configured to receive communications via the FCM channel, including Gmail, Google Play, Google Play Video, Google

Play Music, YouTube, GoogleNow/Google App, Chrome, Google Maps, Google News, and Flipboard. Google's Pixel 2 is configured for monitoring communications on the FCM channel (second channel) to at least each of the above applications. Such communications include high priority FCM messages, and inform the mobile device, and the receiving application, that the application server associated with the application has new data for the application. In response to receiving a high priority FCM message during Doze, Google's Pixel 2 is configured for unblocking the channel between the application and its corresponding application server (the first channel) so that the application can perform an action over the channel (e.g., request the new data from the application server). Google's Pixel 2 unblocks the first channel by adding the first application to a temporary whitelist, which allows the application to access the network and communicate with its application server, after which the application is removed from the temporary whitelist and the channel is, again, blocked. Google's Pixel 2 is configured to exit Doze mode (thereby unblocking the first channel) when the user interacts with the device by, e.g., moving the device or turning on its screen.

47.    Other Google products similarly infringe one or more claims of the '486 Patent. Such other products include at least Google's Pixel 3 devices.

48.    Google also induces infringement by end users of its mobile devices of at least claim 11 of the '486 Patent.  Google promotes and advertises the use of its products, especially the products' capability to preserve remaining battery power and avoid battery drain from background applications. The Doze functionality is enabled on Google's mobile devices by default. Examples of Google's promotional materials appear on the company's website, such as https://store.google.com/us/product/pixel_2_specs?hl=en-US (last visited Oct. 28, 2018).

49.    Google has had notice of the '486 Patent and its infringement since at least as

early as the filing of this lawsuit.  Accordingly, Google's continued promotion, advertisement, and encouragement of its customers to utilize the products' capability to preserve battery life and avoid battery drain from background applications is evidence of Google's specific intent to induce others to infringe the '486 Patent. Further, despite having knowledge of its infringement, Google continues to intentionally and willfully infringe at least claim 11 of the '486 patent.

COUNT 6

**(Infringement of U.S. Pat. No. 10,091,734)**

50.     Google infringes at least claim 1 of the '734 Patent at least under 35 U.S.C. §271(a) and (b).  Google makes, uses, sells, offers to sell, or imports into the United States products, such as the Pixel 2, that meet every limitation of at least claim 1.

51.     Claim 1 of the '734 Patent is directed to a mobile device which improves network resource utilization in a wireless network, the mobile device, comprising: a memory; a radio; and a processor coupled to the memory and configured to: (1) receive instructions from a user to enter a power save mode; while in power save mode (2) block transmission of outgoing application data requests, wherein the outgoing application data requests are background application requests for more than one application; and, while in the power save mode, (2) allow transmission of additional outgoing application data requests in response to occurrence of receipt of data transfer from a remote entity, user input in response to a prompt displayed to the user, and a change in a background status of an application executing on the mobile device, wherein the additional outgoing application data requests are foreground application requests, wherein the remote entity is an intermediary server that provides connectivity between an application server for the application and the mobile device; and exit the power save mode based on received instructions from the user to exit the power save mode, wherein, when the power save mode is

exited, the outgoing application data requests occurring while the mobile device is not in the

power save mode are blocked by user selection on an application-by-application basis, wherein

the user selection instructs the mobile device whether to block the outgoing application data

requests for each application that is selected by the user for blocking.

52.    Google's products infringe at least claim 1 of the '734 Patent. For example,

Google's Pixel 2 is a mobile device comprising a memory (at least 4 GB of RAM and 64 GB of

NAND Flash), a radio (at least an LTE and an 802.11 a/b/g/n/ac radio), and a processor

(Qualcomm Snapdragon 835). Google's Pixel 2 has Google's Android 8.0 (Oreo) loaded into its

memory, and is configured by that operating system and its pre-loaded apps to perform the

functions detailed below. Google's Pixel 2 permits a user to manually enter or exit a power save

mode to improve battery life. As part of that power saving mode, background data usage is

disabled, blocking background application data requests from being transmitted. However,

Google's Pixel 2 is configured to allow transmission of additional outgoing application data

requests (foreground application requests) in response to occurrence of receipt of data transfer

(e.g., a message) from a Google Firebase Cloud Messaging (FCM) server (a remote entity), user

input in response to a prompt displayed to a user (e.g., a user tapping a notification resulting from

the FCM message), and a change in a background status of an application executing on the

mobile device (e.g., tapping the notification to bring the application to the foreground). Google's

FCM server (remote entity) is an intermediary server that provides connectivity between an

application server for the application and the mobile device in the form of a push channel.

Google's Pixel 2 is also configured, outside of the power save mode, to allow a user to block

background application data requests on an application-by-application basis: the user can allow or

disallow background data usage for each application. Disallowing background data usage blocks

outgoing data requests for that application.

53.     Other Google products similarly infringe one or more claims of the '734 Patent.
Such other products include at least Google's Pixel 3 devices.

54.     Google also induces infringement by end users of Google's mobile devices of at
least claim 1 of the '734 Patent.  Google promotes and advertises the use of its products,
especially the products' capability to preserve remaining battery power and avoid battery drain
from background applications.  Further, the infringing power saving functionalities are included
on Google's mobile devices by default. Examples of Google's promotional materials appear on
the company's website, such as https://store.google.com/us/product/pixel_2_specs?hl=en-US
(last visited Oct. 28, 2018).

55.     Google has had notice of the '734 Patent and its infringement since at least as
early as the filing of this lawsuit.  Accordingly, Google's continued promotion, advertisement,
and encouragement of its customers to utilize the products' capability to preserve battery life and
avoid battery drain from background applications is evidence of Google's specific intent to
induce others to infringe the '734 Patent. Further, despite having knowledge of its infringement,
Google continues to intentionally and willfully infringe at least claim 1 of the '734 patent.

## PRAYER FOR RELIEF

SEVEN requests that judgment be entered in its favor and against Google as follows:

a.      Entering judgment declaring that Google has infringed one or more claims of the
Patents-in-Suit in violation of 35 U.S.C. §271;

b.      Ordering that SEVEN be awarded damages in an amount no less than a reasonable
royalty for each asserted patent arising out of Google's infringement of the
Patents-in-Suit, together with any other monetary amounts recoverable by
SEVEN, such as treble damages;

c.      Declaring that Google's infringement has been willful;

d.      Declaring this an exceptional case under 35 U.S.C. §285 and awarding SEVEN its
attorneys' fees; and

e.      Awarding SEVEN such other costs and further relief as the Court deems just and
proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, SEVEN demands a trial by
jury on all issues so triable.

Dated: November 7, 2018

Respectfully submitted,

*/s/ Bruce S. Sostek*

**Bruce S. Sostek**
  State Bar No. 18855700
  Bruce.Sostek@tklaw.com
**Max Ciccarelli**
  State Bar No. 00787242
  Max.Ciccarelli@tklaw.com
**Herbert J. Hammond**
  State Bar No. 08858500
  Herbert.Hammond@tklaw.com
**Richard L. Wynne Jr.**
  State Bar No. 24003214
  Richard.Wynne@tklaw.com
**J. Michael Heinlen**
  State Bar No. 24032287
  Michael.Heinlen@tklaw.com
**Adrienne E. Dominguez**
  State Bar No. 00793630
  Adrienne.Dominguez@tklaw.com
**Justin Cohen**
  State Bar No. 24078356
  Justin.Cohen@tklaw.com
**Vishal Patel**
  State Bar No. 24065885
  Vishal.Patel@tklaw.com
**Nadia E. Haghighatian**
  State Bar No. 24087652
  Nadia.Haghighatian@tklaw.com
**Austin Teng**
  State Bar No. 24093247
  Austin.Teng@tklaw.com
**Natalie M. Cooley**
  State Bar No. 24079912
  Natalie.Cooley@tklaw.com
**Matthew Cornelia**
  State Bar No. 24097534
  Matt.Cornelia@tklaw.com

**THOMPSON & KNIGHT LLP**
One Arts Plaza
1722 Routh St., Suite 1500
Dallas, Texas 75201
214.969.1700
214.969.1751 (Fax)

**Samuel F. Baxter**
  Texas State Bar No. 01938000
  sbaxter@mckoolsmith.com

**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

**Theodore Stevenson, III**
  Texas State Bar No. 19196650
  tstevenson@mckoolsmith.com
**Eric S. Hansen**
  Texas State Bar No. 24062763
  ehansen@mckoolsmith.com

**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

**ATTORNEYS FOR PLAINTIFF
SEVEN NETWORKS LLC**